UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOEL RIVAS,

      Plaintiff,

v.                                                           Case No: 8:22-cv-2358-VMC-JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Joel Rivas seeks judicial review of the denial of his claim for disability insurance benefits and period of disability.  As the Administrative Law Judge's (ALJ) decision was not based on substantial evidence and did not employ proper legal standards, the court recommends that the decision be reversed and remanded.

## BACKGROUND

**A.     Procedural Background**

Plaintiff filed an application for period of disability and disability insurance benefits on May 5, 2017.  (Tr. 183–89.)  The Commissioner denied Plaintiff's claims both initially and upon reconsideration.  (Tr. 70–87, 88–105.)  Plaintiff then requested an administrative hearing (Tr. 120–21), and the ALJ held a hearing on October 1, 2019, at which Plaintiff appeared and testified.  (Tr. 31–69.)  Following the hearing, the ALJ issued an unfavorable decision dated October 17, 2019, finding Plaintiff not

disabled and denying Plaintiff's claims for benefits.  (Tr. 7–25.)  Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1–6.) Plaintiff then filed a complaint with this court seeking review of the Commissioner's decision.  *See Rivas v. Commissioner*, No. 8:20-cv-282-JSM-TGW (M.D. Fla.).  The court entered an order reversing and remanding the Commissioner's decision and judgment was entered in Plaintiff's favor.  (Tr. 1975–91.)

Following the court's order, the Appeals Council vacated the ALJ's October 17, 2019 decision and remanded the case to the ALJ "for further proceedings consistent with the order of the court."  (Tr. 1970–74.)  On remand, the ALJ conducted a hearing on June 2, 2022, at which Plaintiff appeared and testified.  (Tr. 1935–69.)  The ALJ then issued a second unfavorable decision, dated June 23, 2022, finding Plaintiff not disabled and denying Plaintiff's claims for benefits.  (Tr. 1907–34.)  The ALJ's June 23, 2022 decision became the final decision of the Commissioner pursuant to 20 C.F.R. § 404.984, and Plaintiff timely filed a complaint with this court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Before the court are Plaintiff's brief in opposition to the Commissioner's decision (Dkt. 14), Defendant's brief in support of the Commissioner's decision (Dkt. 19), and Plaintiff's reply memorandum (Dkt. 20).

B.     **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1970, claimed disability beginning on March 24, 2017.  (Tr. 70, 88, 1922.)  Plaintiff has at least a high school education and past relevant

work experience as a truck driver and a vocational trainer.  (Tr. 1922, 1941–45.)

Plaintiff alleged disability due to right ankle/foot osteoarthritis, right knee

osteoarthritis, left ankle/foot osteoarthritis, left knee osteoarthritis, carpal tunnel in left

and right hands, severe central sleep apnea/narcolepsy, chronic bronchitis, dry eye

syndrome, severe gastroesophageal reflux disease, and hypertension anxiety.  (Tr. 71,

98.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed

substantial gainful activity from March 24, 2017, the alleged onset date, through

September 30, 2019, the date last insured.  (Tr. 1922.)  After conducting a hearing and

reviewing the evidence of record, the ALJ determined that Plaintiff had the following

severe impairments: diabetes; obstructive sleep apnea; carpal tunnel syndrome, status

post repairs; osteoarthritis in Plaintiff's ankles and knees; cervical and lumbar disc

degeneration; residual impairment/arthritis from foot injury; tinnitus and hearing loss;

mild traumatic brain injury with headaches; post-traumatic stress disorder

(PTSD)/anxiety; depression; and alcohol abuse.  (Tr. 1913.)  Notwithstanding the

noted impairments, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 1914.)  The ALJ then

concluded that Plaintiff retained a residual functional capacity (RFC) to perform light

work as defined in 20 C.F.R. § 404.1567(b), except:

> he can occasionally lift and carry twenty pounds and frequently lift and
> carry ten pounds; he can stand for about two hours, walk for about six

hours and sit for about six hours, all during an eight-hour workday with the normal and customary breaks; he should avoid climbing ladders, ropes and scaffolds; he can occasionally climb three-step stools, ramps and stairs, balance, stoop, kneel, crouch and crawl; he can frequently reach and handle bilaterally; he should avoid concentrated exposure to bright lights such as outdoor work; he should avoid concentrated exposure to loud noise, the use of industrial machinery and unprotected heights; he can perform simple but not complex tasks and instructions with no production-paced work; he can have no more than occasional interaction with others.

(Tr. 1916.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established that his medically determinable impairments could reasonably be expected to have caused some of the alleged symptoms, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 1917.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform his past relevant work.  (Tr. 1922.)  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as surveillance system monitor, election clerk, and tube operator.  (Tr. 1923, 1964.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that Plaintiff was not disabled through September 30, 2019, the date last insured.  (Tr. 1923–24.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a).  Under this process, the ALJ must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant

can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal

standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision and argues that the ALJ erred in considering medical opinion evidence from two medical sources and that the ALJ erred in assessing Plaintiff's symptoms and the RFC.  (Dkt. 14.)  For the following reasons, the court finds that the ALJ erred in considering the medical opinion evidence and recommends reversal of the ALJ's decision.

## I.   Consideration of Medical Opinion Evidence

Plaintiff argues that the ALJ failed to properly address two medical opinions in the record that were submitted as part of Plaintiff's claim for Veterans Administration (VA) benefits.  (Dkt. 14 at 3–8.)  First, Plaintiff argues that the ALJ failed to consider a Compensation & Pension (C&P) Examination Note and Disability Benefits Questionnaire (DBQ) completed by Dr. Linda J. Lancaster on March 13, 2019.  (*Id.* at 4–6; Dkt. 20 at 1–3.)  Second, Plaintiff argues that the ALJ failed to properly consider a C&P Examination Note and DBQ completed by Dr. Gayani K. Leonard on April 2, 2019.  (Dkt. 14 at 6–8; Dkt. 20 at 3–4.)  Plaintiff contends that both Dr. Lancaster's and Dr. Leonard's opinions constitute medical opinion evidence under the relevant regulations and that the ALJ's consideration of that medical opinion evidence in the decision is inadequate.  (Dkts. 14, 20.)  Defendant responds that the evidence submitted by Dr. Lancaster and Dr. Leonard is not "medical opinion" evidence as

defined by the regulations, and the ALJ's consideration of the evidence was therefore sufficient.  (Dkt. 19 at 6–9.)  Upon consideration, the court finds that remand is required because Dr. Lancaster's and Dr. Leonard's C&P Examination Notes contained "medical opinion" evidence under the regulations, and that the ALJ failed to properly address this evidence in the decision.

### A. Applicable Regulations

On January 18, 2017, the Social Security Administration (SSA) published new regulations regarding the consideration of medical opinions and other evidence, with an effective date of March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Plaintiff filed his application for benefits on May 5, 2017, and the new regulations therefore apply to his claim.  (Tr. 183–89); *see Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022) (affirming that new regulations apply to applications filed after effective date).

The revised regulations distinguish between several types of medical evidence, including "objective medical evidence," "medical opinion" evidence, and "other medical evidence."   20 C.F.R. § 404.1513(a).   "Objective medical evidence" is "medical signs, laboratory findings, or both[.]"  20 C.F.R. § 404.1513(a)(1).  "Medical opinion" evidence is defined as "a statement from a medical source about what [a claimant] can still do despite [their] impairment(s)" and whether the claimant has any impairment-related limitations or restrictions in several areas, including their ability to perform the physical and mental demands of work activities.   20 C.F.R. §

404.1513(c)(2).[1]  The regulations define "other medical evidence" as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [a claimant's] impairments, [their] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(c)(3).

When considering medical opinion evidence submitted by a medical source, an ALJ must "articulate . . . how persuasive [it] find[s] all of the medical opinions . . . in [the] case record," consistent with the standards in 20 C.F.R. § 404.1520c.  20 C.F.R. § 404.1520c(a)–(b).  Under the regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including those from a claimant's medical sources. *Id.*; *see also Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) ("Under the new regulatory scheme, the ALJ must articulate how persuasive he finds each medical opinion, but he no longer must assign more weight to a treating source's medical opinion or explain why good cause exists to disregard it.").  Instead, the regulations provide "several factors for determining what weight to give a claimant's proffered medical opinions."  *Harner*, 38 F.4th at 897 (citing 20 C.F.R. § 404.1520c(c)(1)–(5)).  While there are several factors the ALJ must consider, "[t]he most important factors" are supportability and consistency.  20 C.F.R.

---

[1] A "medical source" is defined to include "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law[.]"  20 C.F.R. § 404.1502(d).

§ 404.1520c(b)(2).  "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).  Under the revised regulations, the ALJ must therefore explain how it "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings," but need not discuss any of the other factors.  20 C.F.R. § 404.1520c(b)(2); *see Callahan v. Comm'r of Soc. Sec.*, No. 22-12701, 2023 WL 3736042, at *1 (11th Cir. May 31, 2023) ("Supportability and consistency are the most important factors and must be explained, but the ALJ is not required to explain the other factors.").  When a medical source submits multiple medical opinions, the ALJ is not required to discuss each opinion, but will instead "articulate how [it] considered the medical opinions . . . from that medical source together in a single analysis," considering the necessary factors. 20 C.F.R. § 404.1520c(b)(1).

The regulations further provide that "[d]ecisions by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor

persuasive" such that the ALJ "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c[.]" 20 C.F.R. § 404.1520b(c); *see* 20 C.F.R. § 404.1504 ("[W]e will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits."). This includes VA determinations as to entitlement to benefits under the VA's regulations. 20 C.F.R. § 404.1504. However, in determining entitlement to SSA benefits, the ALJ is required to "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receives as evidence in [a] claim in accordance with § 404.1513(a)(1) through (4)." *Id.*

### B. Consideration of C&P Examination Notes

#### 1. Dr. Lancaster

Dr. Lancaster evaluated Plaintiff for residuals from traumatic brain injury (TBI) on March 13, 2019 by conducting an in-person examination and reviewing his medical records. (Tr. 1633.) Within Dr. Lancaster's C&P Examination Note, she assessed Plaintiff's TBI-related cognitive impairment and subjective symptoms in several areas, including memory, judgment, social interaction, orientation, motor activity, visual spatial orientation, subjective symptoms, neurobehavioral effects, communication, and consciousness. (Tr. 1637–40.) With respect to memory, attention, concentration, and executive functions, Dr. Lancaster noted that Plaintiff complains of "mild

memory loss" and "reports his mind races so it is hard to focus on one thing, noting he is forgetful, easily confused, and has to use lists and wife assists him by prompting and reminding." (Tr. 1637–38.) Dr. Lancaster further noted that Plaintiff has mildly impaired judgment for complex or unfamiliar decisions stating that he is "somewhat impulsive in decision making so he has learned to reach out for help/guidance when needed from family[] and friends." (Tr. 1638.) With respect to visual spatial orientation, Dr. Lancaster noted that Plaintiff is mildly impaired, occasionally gets lost in unfamiliar surroundings, has difficulty reading maps or following directions, but that he "can typically figure it out." (Tr. 1638–39.) Dr. Lancaster further noted that Plaintiff's social interaction was "routinely appropriate," he was "always oriented to person, time, place, and situation," his motor activity was normal, and he had subjective symptoms, including anxiety and headaches, and neurobehavioral effects such as moodiness and impulsivity, that did not interfere with his work, workplace interaction, or social interaction. (Tr. 1638–39.) In assessing the functional impact of his TBI, Dr. Lancaster noted that Plaintiff's residual conditions attributable to his TBI impact his ability to work and that Plaintiff "states his memory issues and headaches have impacted him in the workplace before." (Tr. 1642.)

Dr. Lancaster also authored a "Medical Opinion" for service connection of Plaintiff's conditions as part of her C&P Examination Note. (Tr. 1643–48.) Dr. Lancaster considered Plaintiff's diagnoses for migraine headaches and tension, and that Plaintiff "noted the onset of headaches described as throbbing in the left or right

occipital areas, then moving mostly to the left temporal region associated with light/sound sensitivity." (Tr. 1645.) Dr. Lancaster continued that Plaintiff "notes headaches with onset of stress/anxiety, more of a pressure sensation, beginning in the left temporal region," that he experiences sensitivity to light and sound, and that the pain typically lasts for less than one day. (Tr. 1646.) With respect to functional impact, Dr. Lancaster noted that Plaintiff's headaches impact his ability to work and that "[w]hen he has a headache, he has to stop work until it passes." (Tr. 1648.) The ALJ did not address any portion of Dr. Lancaster's C&P Examination Note, DBQ, or "Medical Opinion" in the decision. (Tr. 1913–24.)

Upon consideration of Dr. Lancaster's C&P Examination Note, the court finds that statements within the note regarding the impact of Plaintiff's impairments are medical opinions as defined in 20 C.F.R. § 404.1513(a)(2). As noted, a medical opinion is a statement about what a claimant can still do despite his impairments and whether he has one or more impairment-related limitations or restrictions in several abilities. 20 C.F.R. § 404.1513(a)(2). Those abilities include a claimant's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." *Id.* § 404.1513(a)(2)(ii). Dr. Lancaster's C&P Examination Note assessed the extent of Plaintiff's TBI-related cognitive impairment and opined as to areas in which Plaintiff could still function despite his impairments and as to what limitations

or restrictions he has in his ability to perform mental demands of work activities.  (Tr. 1637–42.)  For instance, Dr. Lancaster noted that Plaintiff has "[m]ildly impaired judgment" such that for "complex or unfamiliar decisions" he is "occasionally unable to identify, understand, and weigh the alternatives, understand the consequences of choices, and make a reasonable decision" and that he has to rely on others for help and guidance, when necessary, but noted that his social interaction and orientation were appropriate.  (Tr. 1638.)  Dr. Lancaster opined that Plaintiff's motor activity was normal, but that his visual spatial orientation was "[m]ildly impaired."  (Tr. 1638–39.)  Dr. Lancaster further opined that Plaintiff's "residual conditions attributable to [his] traumatic brain injury impact his [] ability to work" and that he "states his memory issues and headaches have impacted him in the workplace before."   (Tr. 1642.)  Moreover, Dr. Lancaster concluded in her "Medical Opinion" that Plaintiff suffers from headaches associated with light and sound sensitivity that onset with stress or anxiety and last for less than a day, which impact his ability to work because "[w]hen he has a headache, he has to stop work until it passes."  (Tr. 1645–46, 1648.)[2]  Taken together, these statements are medical opinions pursuant to 20 C.F.R. § 404.1513(a)(2) as they reflect an assessment of what Plaintiff can do despite his impairments and Plaintiff's impairment-related limitations or restrictions in his ability to perform the

---

[2] Defendant posits that this "statement reads as if it is a recitation of Plaintiff's subjective report to the doctor."  (Dkt. 19 at 7.)  However, as Plaintiff argues, the ALJ did not discuss this evidence nor make this finding in the decision and the court "cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'"  *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

mental demands of work activities, including understanding, carrying out instructions, and responding appropriately to supervision, co-workers, or work pressures in a work setting. *See, e.g.*, *Pastrana Rodriguez v. Comm'r of Soc. Sec.*, No. 6:22-cv-645-DNF, 2023 WL 5030798, at *3–4 (M.D. Fla. Aug. 8, 2023) (remanding for further consideration of VA C&P Examination where doctor "found that Plaintiff's levels of distress, anxiety, and depression suggested that he would have significant problems with productivity" and reliability); *Jerona K. v. Comm'r, Soc. Sec. Admin.*, No. 1:22-cv-2081-CMS, 2023 WL 5491901, at *7–8 (N.D. Ga. June 29, 2023) ("Other courts have concluded that certain portions of C&P questionnaires may be considered medical opinions as defined in 20 C.F.R. § 404.1513(a)(2).") (collecting cases).

Under the relevant regulations, the ALJ was required to articulate how persuasive he found each medical opinion, consistent with the factors in 20 C.F.R. § 404.1520c. *Walker*, 2022 WL 1022730, at *2. The ALJ was therefore "not free to ignore [Dr. Lancaster's C&P Examination Note] in [its] entirety, but rather, [was] required to articulate how persuasive they found the opinions offered therein, explicitly stating how they considered the supportability and consistency factors." *James W. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-00116-RGV, 2022 WL 17078899, at *10 (N.D. Ga. Mar. 29, 2022) (citing *Johnathan W. v. Saul*, No. 6:16-cv-1242(CFH), 2021 WL 1163632, at *4–5 (N.D.N.Y. Mar. 26, 2021) and *Christopher M.V. v. Comm'r of Soc. Sec.*, No. 1:19-cv-1500 (JJM), 2021 WL 804258, at *2–4 (W.D.N.Y Mar. 3, 2021)); *Acosta v. Comm'r of Soc. Sec.*, No. 8:21-cv-306-MSS-TGW, 2023 WL 6940259,

at *1–3 (M.D. Fla. Mar. 20, 2023) (analyzing C&P workers' compensation questionnaire and remanding because the "ALJ was only free to disregard . . . references to 'Total Disability' or '100% disabled,' but not the remaining medical opinions included within the reports"). The ALJ's decision did not discuss Dr. Lancaster's C&P Examination Note or the medical opinion evidence within the note, and remand is therefore necessary for further consideration of this evidence. *See, e.g.*, *Pastrana Rodriguez*, 2023 WL 5030798, at *3–4 (remanding for further consideration of VA C&P Examination where the ALJ "did not mention this opinion in the decision and did not consider the supportability or consistency of this opinion as required by the regulations"); *Jerona K.*, 2023 WL 5491901, at *8 ("[T]he ALJ's failure to discuss or acknowledge the C&P Questionnaire was legal error."); *Chad G. v. Kijakazi*, No. CV 1:21-1645-SVH, 2021 WL 5564032, at *15 (D.S.C. Nov. 29, 2021) ("Although the ALJ was not required to address the VA's disability decision directly, he was required to evaluate the underlying medical opinion forming the basis of the VA's decision in accordance with 20 C.F.R. § 404.1520c.") (citing *Charles F. v. Comm'r of Soc. Sec.*, No. 19-cv-1664-LJV, 2021 WL 9633585 (W.D.N.Y. Mar. 15, 2021)).

### 2. Dr. Leonard

The ALJ also erred in failing to consider medical opinion evidence within Dr. Leonard's C&P Examination Note. Dr. Leonard conducted an in-person examination of Plaintiff and records review, and authored a DBQ and "Medical Opinion" regarding Plaintiff's PTSD. (Tr. 1584–93.) Within the C&P Examination Note, Dr. Leonard

noted that Plaintiff has "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." (Tr. 1585.) Dr. Leonard found that Plaintiff's PTSD and traumatic brain injury "both cause his current level of occupational and social dysfunction" because they are "biologically and behaviorally continuous and run concurrently and cannot be separated out." (Tr. 1586.) In assessing Plaintiff's PTSD, Dr. Leonard noted several criteria to establish the diagnosis, including persistent negative emotional state, markedly diminished interest or participation in significant activities, irritable behavior and angry outbursts, hypervigilance, exaggerated startle response, problems with concentration, and sleep disturbance. (Tr. 1588–89.) Dr. Leonard further found that these PTSD symptoms "cause clinically significant distress or impairment in [Plaintiff's] social, occupational, or other important areas of functioning." (Tr. 1589.) Dr. Leonard also found that Plaintiff suffered from the following symptoms associated with his PTSD: depressed mood; anxiety; suspiciousness; chronic sleep impairment; mild memory loss, such as forgetting names, directions or recent events; impairment of short- and long-term memory, for example retention of only highly learned material, while forgetting to complete tasks; flattened affect; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work-like setting; obsessional rituals which interfere with routine activities; and impaired impulse control, such as unprovoked irritability with periods of violence.

(Tr. 1589–90.)  Dr. Leonard then provided a "Medical Opinion" regarding symptoms from Plaintiff's TBI and PTSD and concluded that Plaintiff's "headaches and memory loss are the only two symptoms that can be totally attributed to [Plaintiff's] TBI" and that "[a]ll other symptoms can be due to either the PTSD or the TBI[.]"  (Tr. 1593.)

In rendering the decision, the ALJ considered only Dr. Leonard's statement that Plaintiff has "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood."  (Tr. 1921 (citing (Tr. 1585)).)  Specifically, the ALJ stated:

> Dr. G. Leonard, who has treated the claimant, noted the claimant had "deficiencies" in most areas. . . . He did not, however, state the extent to the deficiencies.  This opinion is too vague to be very persuasive.

(Tr. 1921) (internal citation omitted).  The ALJ also referenced Dr. Leonard's discussion of the TBI evaluation conducted by Dr. Lancaster and stated that Plaintiff "admitted his anxiety was only mild."  (Tr. 1921 (citing (Tr. 1592)).)[3]  The ALJ did not consider any other portion of Dr. Leonard's C&P Examination Note in the decision.

---

[3] The ALJ attributes the statement that Plaintiff has "mild or occasional headaches, mild anxiety" to Plaintiff.  (Tr. 1921 ("The claimant admitted his anxiety was only mild.").)  However, the ALJ's decision references a portion of Dr. Leonard's opinion, in which Dr. Leonard quotes the symptoms listed in Dr. Lancaster's TBI evaluation.  *See* (Tr. 1592.)  Dr. Lancaster's evaluation does not make clear whether "mild or occasional headaches, mild anxiety" were reported as a quote from Plaintiff or were listed as examples of symptoms in her C&P Examination Note.  (Tr. 1639.)  The full excerpt from Dr. Lancaster's C&P examination indicates that Dr. Lancaster checked a box reading: "Subjective symptoms that do not interfere with work; instrumental activities of daily living; or work, family or other close relationships.  Examples are: mild or occasional headaches, mild anxiety."  The section continued: "If the Veteran has subjective symptoms, describe (brief summary)" and Dr. Lancaster wrote: "Veteran is service connected for PTSD and has anxiety symptoms related to same, and also still experiences headaches."  (Tr. 1639.)

Upon consideration, the court finds that Dr. Leonard's statements regarding Plaintiff's abilities related to his PTSD reflect an assessment as to what Plaintiff can do despite his impairments as well as his impairment-related limitations and restrictions and were therefore "medical opinion" evidence and required to be considered pursuant to 20 C.F.R. § 404.1520c.  *See* 20 C.F.R. § 404.1513(a)(2). Defendant argues that Dr. Leonard's findings with respect to Plaintiff's PTSD symptoms were "other medical evidence relating to diagnosis, clinical findings, treatment and subjective complaints" and therefore did not need to be addressed by the ALJ.  (Dkt. 19 at 8.)  However, "[c]ourts have concluded that similar statements [regarding symptoms and effects of PTSD] are assessments of a plaintiff's functional abilities related to work."  *Jerona K.*, 2023 WL 5491901, at *7 (citing *Johnathan W.*, 2021 WL 1163632, at *7 and *Christopher M.V.*, 2021 WL 804258, at *3–4); *see also Ealey v. Comm'r of Soc. Sec.*, No. 3:20-cv-124-KHJ-JCG, 2021 WL 2212384, at *3 (S.D. Miss. May 7, 2021), *report and recommendation adopted sub nom. Ealey v. Saul*, 2021 WL 2211445 (S.D. Miss. June 1, 2021) (remanding for further consideration of C&P Examination Consult and Disability Benefits Questionnaire).  Dr. Leonard specifically found that Plaintiff suffered from "irritable behavior and angry outbursts," "hypervigilance," "exaggerated startle response," and "problems with concentration," and that these symptoms "cause clinically significant distress or impairment in [Plaintiff's] social, occupational, or other important functioning."  (Tr. 1589.)  Dr. Leonard also noted that Plaintiff's PTSD causes "[d]ifficulty in establishing and

maintaining effective work and social relationships" and "[d]ifficulty in adapting to stressful circumstances, including work or a worklike setting," and "[o]bsessional rituals which interfere with routine activities." (Tr. 1589–90.)  These findings reflect a consideration of Plaintiff's ability to perform mental demands of work activities, such as maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in work setting.  *See* 20 C.F.R. § 404.1513(a)(2)(ii); *James W.*, 2022 WL 17078899, at *11 (As in *Johnathan W.*[, 2021 WL 1163632, at *4–5] and *Christopher M.V.*[, 2021 WL 804258, at *2–4], Dr. Asher's findings offered in the PTSD questionnaire were rendered after a C&P examination and 'were medical opinions . . . [that] explained how [claimant's] impairments affected his ability to work.'").

The ALJ did not provide any analysis of these sections of Dr. Leonard's C&P Examination Note, nor did the ALJ properly assess the supportability and consistency of Dr. Leonard's medical opinions as required by 20 C.F.R. § 404.1520c.  *See* (Tr. 1921.)  Remand is therefore necessary for further consideration of the medical opinion evidence within Dr. Leonard's C&P Examination Note.  *See, e.g.*, *Charles F.*, 2021 WL 963585, at *2 ("Indeed, the ALJ not only was required to consider PA Barber's medical opinions, he also was required to 'articulate' in his decision how persuasive he found them—explicitly 'explain[ing] how [he] considered [at least] the supportability and consistency factors.'"); *Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-01515-RBD-DCI, 2020 WL 1957597, at *6 (M.D. Fla. Apr. 8, 2020) (recommending

remand for further consideration of medical opinion because "the new regulations require an explanation, even if the ALJ (and the Commissioner) believe an explanation is superfluous"), *report and recommendation adopted,* 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020).

## II.    Assessment of Symptoms and the RFC

Plaintiff also argues that the ALJ erred in assessing his headache symptoms because the ALJ failed to consider Dr. Lancaster's C&P Examination Note and that the ALJ's "assessment of headaches was based on an incorrect, incomplete, and inaccurate reading of the evidence cited." (Dkt. 14 at 9–11.)  Plaintiff further argues that the ALJ erred by failing to consider the combination of his impairments in assessing his RFC and that the "combination of loss of concentration from mental impairments and loss of concentration from physical impairments" would preclude a finding of sufficient jobs available in the national economy.  (*Id.* at 11–13.)  As discussed above, the court finds that the ALJ erred in assessing Plaintiff's RFC by failing to consider the medical opinions of Dr. Lancaster and Dr. Leonard.  Because the court recommends that the ALJ's decision be reversed and remanded on this basis, and because the ALJ's further consideration of the evidence on remand may have an impact on the subsequent steps of the sequential analysis, the court does not address the remaining issues raised by Plaintiff.  *See, e.g.*, *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand).  Nevertheless, the ALJ on remand should

reassess Plaintiff's RFC in consideration of all the relevant evidence of record.  *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is **RECOMMENDED**:

1. The decision of the Commissioner be **REVERSED** and the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the recommendations set forth above; and

2. The Clerk of Court be directed to enter judgment consistent with this Report and Recommendation.

**IT IS SO REPORTED** in Tampa, Florida, on November 17, 2023.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has 14 days after being served with a copy of this Report and Recommendation to file written objections to the Report and Recommendation's factual findings and legal conclusions.  *See* 28 U.S.C. § 636(b)(1).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

- 22 -

Copies furnished to:
The Honorable Virginia M. Hernandez Covington
Counsel of Record